IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TERRY HUMPHREY,

       Petitioner,

v.                                Case No. 2:08-cv-00879

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

       Respondent.

## AMENDED PROPOSED FINDINGS AND RECOMMENDATION[1]

On June 27, 2008, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (docket sheet document # 2) and a Memorandum and Brief in support thereof (# 3). This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On September 5, 2008, Respondent filed a Response to the Petition (# 8), a Motion for Summary Judgment, with accompanying

---

[1] This Proposed Findings and Recommendation ("PF&R") was initially filed and mailed to the parties on May 7, 2009. However, the undersigned neglected to make a ruling concerning the Petitioner's "Motion to Dismiss Respondent's Motion for Summary Judgment," which is contained in docket sheet document # 12. This Amended PF&R addresses that motion as well. It is hereby **ORDERED** that the objection period discussed on pages 21-22 of this document shall run from the date of filing of this Amended PF&R.

exhibits (# 9), and a Memorandum in Support (# 10).  On September 17, 2008, in accordance with the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the undersigned entered an Order advising Petitioner of his right to file a response to Respondent's Motion for Summary Judgment, and setting deadlines for a response and reply.  (# 11).

On October 17, 2008, Petitioner filed an "Objection to Respondent's Answer and Motion for Summary Judgment" and "Motion to Dismiss Respondent's Motion for Summary Judgment" (# 12) and a "Memorandum of Law in Support of Petitioner's Motion to Deny Summary Judgment" (# 13) (collectively referred to as "Petitioner's Response").  Respondent did not file a reply.  This matter is ripe for determination.

## STATE COURT PROCEEDINGS

During the January 1984 term of court, Petitioner was indicted by a Fayette County grand jury on one count of murder.  The indictment stated:

> The Grand Jurors of the State of West Virginia, in and for the body of the County of Fayette, upon their oaths, and now attending the said Court, present that TERRY W. HUMPHREY on the ____ day of February, 1984, in the said County of Fayette feloniously, willfully, maliciously, deliberately and unlawfully did slay, kill, and murder one Odell Washington, 61-2-1, against the peace and dignity of the State.

(State v. Humphrey, Case No. 84-F-105) (# 9, Ex. 1).

Petitioner was represented by attorneys James C. Blankenship, III and Gene Carte.  Following a jury trial in the Circuit Court of

2

Fayette County, on July 25, 1984, Petitioner was convicted of first degree murder, and the jury did not recommend mercy. (Id., Ex. 2). By Order entered August 21, 1984, the Circuit Court of Fayette County sentenced Petitioner to life in prison without mercy. (Id.)

Mr. Blankenship filed a Petition for Appeal of Petitioner's conviction and sentence to the Supreme Court of Appeals of West Virginia (the "SCAWV") on July 12, 1985.[2] (Id., Ex. 2). The SCAWV affirmed Petitioner's conviction by written opinion issued on December 10, 1986. State v. Humphrey, 351 S.E.2d 613 (W. Va. 1986). (Id., Ex. 3).[3]

On January 28, 1993, Petitioner filed a petition in the Circuit Court of Fayette County, requesting that counsel be appointed to assist him in filing a petition for a writ of habeas corpus. Petitioner's case was assigned Case No. 93-C-102(H). According to Petitioner's Memorandum of Law filed with his Response, several different attorneys were appointed to represent him during the course of his Circuit Court habeas proceedings. On

---

[2] Obviously, the Petition for Appeal was not filed within the four month period provided by Rule 3(a) of the West Virginia Rules of Appellate Procedure. Respondent has not specified whether Petitioner received extensions of time to file his Petition for Appeal, but it would so appear.

[3] Respondent's brief notes that, between 1985 and 1993, Petitioner filed several unsuccessful state habeas petitions in the Circuit Court of Fayette County, and several petitions for a writ of habeas corpus under the original jurisdiction of the SCAWV, which were summarily refused. For the purpose of this proceeding, only the 1993 petition discussed herein and the appeal therefrom are relevant.

October 17, 2005, attorney Robert C. Catlett filed an Amended
Petition for a Writ of Habeas Corpus.

On November 16, 2006, following an omnibus evidentiary
hearing, the Circuit Court of Fayette County entered an Order
addressing the merits of Petitioner's claims for habeas corpus
relief and denying the petition. (# 9, Ex. 6).[4]

On June 7, 2007, Petitioner, by counsel, E. Taylor George,
filed a Petition for Appeal from the denial of Petitioner's Circuit
Court habeas corpus petition. (Id., Ex. 7). On September 13,
2007, the SCAWV refused that Petition for Appeal. (Id.)

Petitioner then filed the instant Petition for a Writ of
Habeas Corpus under 28 U.S.C. § 2254 on June 27, 2008. (# 2). In
the instant petition, Petitioner raises two claims for habeas
corpus relief. They are:

> 1. Petitioner's indictment charging him with First
> Degree Felony Murder was defective because the
> indictment did not contain all of the essential
> elements of Felony-Murder, where there was an
> amendment to the indictment and a material variance
> between the proof offered, the crime charged and
> the instructions of robbery or attempted robbery
> under the Felony Murder Rule, was unlawfully and
> highly prejudicial to this Petitioner, by allowing
> the State to introduce evidence of a crime, i.e.,
> robbery or attempted robbery, to which the
> Petitioner had not been properly charged with,
> although Petitioner was charged with First Degree
> Murder, but was convicted of First Degree Felony-

---

[4] Petitioner's Memorandum of Law contends that the Circuit
Court denied the petition without addressing the merits of his
claims. The Order clearly demonstrates that the court considered
the merits of Petitioner's claims for relief.

4

Murder.  Petitioner has rights under the grand Jury
Clause of Article II, Section 4 of the West
Virginia Constitution to be tried only on felony
offenses for which a grand jury has returned in an
indictment, against the Petitioner.  The Due
Process Clause of Article III, Section 10 of the
West Virginia Constitution, requires procedural
safeguards against state action which effects a
liberty or property interest and the Sixth and
Fourteenth Amendment[s] to the United States
Constitution to Due Process Clause.

2.  Petitioner contends and alleges that his trial
counsel, Mr. James Blankenship was ineffective.
Counsel's performance failed to exhibit the normal
and customary degree of skills possessed by an
attorney who is suppose[d] to be reasonably
knowledgeable of criminal law.  When Petitioner's
trial counsel failed to properly investigate,
present, or argue to the jury mitigating evidence,
or to motion the trial court for an [sic; a]
unitary trial, which prejudiced this Petitioner's
chances of receiving mercy by the jury, if
convicted, in violation of Petitioner's rights to
effective assistance of counsel under Article III,
Section 5 and 14 of the West Virginia Constitution
and the 5, 6, 8, and 14 Amendment[s] to the United
States Constitution.

(# 2 at 6-8).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the

Anti-terrorism and Effective Death Penalty Act of 1996 (the

"AEDPA") provides:

An application for a writ of habeas corpus on behalf of
a person in custody pursuant to the judgment of a State
court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings
unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal Law, as determined by the Supreme

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.  Id. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

6

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. <u>See</u>, *e.g.*, <u>Blackledge v. Allison</u>, 431 U.S. 63, 81 (1977); <u>Maynard v. Dixon</u>, 943 F.2d 407, 412 (4th Cir. 1991). Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## **FACTUAL BACKGROUND**

This summary of the evidence is taken from the SCAWV's opinion affirming Petitioner's conviction:

> On the night of February 17, 1984, Odell Washington was shot once in the chest in the alley behind his grocery store. After being shot, he managed to walk to the front of the store where he collapsed and died from the shotgun wound. His body was discovered soon thereafter.

> On the following day, Hudon Nicholes went to the State police headquarters in Oak Hill and related that in a conversation he had with the defendant prior to the shooting, the defendant admitted waiting outside of Mr. Washington's store on a prior occasion with the intent to rob Mr. Washington, but did not do so at that time. Mr. Nicholes agreed to aid the State police in their investigation of the shooting by meeting with the defendant while wearing a transmitting device that allowed the State police to listen and record their conversation. In the course of one of these tape-recorded discussions with the defendant, he again mentioned to Mr. Nicholes that a few days prior to the shooting, he had gone down to Mr. Washington's store with a butcher knife to rob him, but for some reason changed his mind.

7

Based on this information, on February 20, 1984, at about 8:15 in the evening, State police officer Gary McGraw contacted the defendant at his sister's house and asked him if he would voluntarily go to State police headquarters to answer some questions regarding the shooting of Mr. Washington. The defendant agreed to do so voluntarily and was driven to the headquarters in a State police cruiser.

When they arrived at the headquarters, the defendant was taken to a room by Officer McGraw who advised him of his <u>Miranda</u> rights [footnote omitted] and asked some preliminary questions. This testimony at the suppression hearing, at which the defendant did not testify, indicated that several other State police officers were in and out of the room during this time. The defendant was not restrained by handcuffs or any other devices, was not under arrest, and, according to the State police officers, was free to leave at any time. The defendant initially denied any involvement in the shooting. A tape recording of his conversation with Mr. Nicholes was then played for the defendant. Upon further questioning about the shooting, the defendant started crying and stated, "I did it." The statement was made at approximately 9:00 p.m., which was shortly after he had arrived at the headquarters.

After this oral statement, Officer McGraw again read the <u>Miranda</u> rights to the defendant from a waiver of rights form. The defendant was allowed to read the rights form and subsequently he signed it. The time noted on the rights form was 9:10 p.m. After the defendant signed the waiver of rights form, Officer McGraw proceeded to question the defendant in more detail about the incident and recorded his answers by writing them down on a legal pad. He began taking this written statement at about 9:16 p.m.

According to the suppression hearing testimony, it took approximately one hour and fifteen minutes for Officer McGraw to complete the defendant's written statement which consisted of eight pages. After the questioning was finished, the defendant read and signed each page of the statement.

In his statement, the defendant explained that on February 17, 1984, he had been drinking beer and worrying about some money he owed. At some time after 8:00 p.m.,

he went to his father's house and obtained a shotgun. Thereafter, at approximately 10:15 p.m., he waited in the alley beside Mr. Washington's store with the loaded shotgun for about one hour. When Mr. Washington walked into the alley, the defendant said, "Hold it. This is a stickup." When Mr. Washington subsequently yelled for help, the defendant fired the shotgun, panicked, and ran. He also stated that after hiding the shotgun in two different locations, he retrieved the shotgun and gave it to someone to pay off a debt. While the interrogation continued, a State police officer went to the address where the defendant said the shotgun would be found and recovered the shotgun at approximately 10:17 p.m.

When the statement was completed around 10:30 p.m., the State police sought to corroborate some of the information given by the defendant. Officers were sent to a dumpster described by the defendant, where he claimed to have disposed of some articles, but were unable to find anything. The officers then proceeded to the home of the defendant's parents, where the defendant claimed the clothes he wore on the night of the shooting would be found. At 11:00 p.m., the State police retrieved the clothing described by the defendant from his mother, who had consented to the search.

During this time, the defendant remained at State police headquarters. The defendant was taken before a magistrate shortly after midnight. At the presentment, one State police officer overheard the defendant explain to his mother, "Mommy, I didn't mean to kill him."

At trial, the State proceeded on a felony-murder theory, contending the murder occurred in the course of an attempted robbery, and also under a first degree murder theory. As previously noted, the jury found the defendant guilty of first degree murder with no recommendation of mercy.

State v. Humphrey, 351 S.E.2d 613, 614-616 (W. Va. 1986). (# 9, Ex. 4).

## ANALYSIS

### A.   Petitioner's defective indictment claim.

As stated above, Petitioner's first claim in his section 2254

9

petition asserts that Petitioner's right to due process was violated because the indictment upon which he was convicted did not contain all of the essential elements of felony murder, and that there was a material variance between the crime charged in the indictment and the jury instructions because the indictment did not identify the underlying felony.

Respondent argues that Petitioner has not stated a cognizable federal claim.  Specifically, Respondent states:

> The indictment under which Petitioner was ultimately tried and convicted charged Petitioner with murder pursuant to West Virginia Code § 61-2-1. [FN 4]   At trial, the State proceeded on a felony murder theory of prosecution. [FN 5]
>
> [FN 4 - The most recent version of the statute under which Petitioner was charged and convicted now contains specific language that addresses Petitioner's claim regarding the indictment.   However, at the time Petitioner was charged, the language regarding the sufficiency of the indictment was not in the statute.   Also, several enumerated felonies have been added since Petitioner was convicted.
>
> *§ 61-2-1.   First and second degree murder defined; allegations in indictment for homicide*
>
> Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree.   All other murder is murder of the second degree.
>
> In an indictment for murder and manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every such indictment to charge

that the defendant did feloniously, willfully,
maliciously, deliberately and unlawfully slay, kill and
murder the deceased.]

[FN 5 - "Unlike traditional first degree murder, felony-
murder does not 'require proof of the elements of malice,
premeditation, or specific intent to kill. It is deemed
sufficient if the homicide occurs accidentally during the
commission of, or the attempt to commit, one of the
enumerated felonies.' Syllabus Point 7, in part, <u>State
v. Sims</u>, 162 W. Va. 212, 248 S.E.2d 834 (1978). Thus,
the State was required to prove '(1) the commission of,
or attempt to commit, one or more of the enumerated
felonies; (2) the defendant's participation in such
commission or attempt; and (3) the death of the victim as
a result of injuries received during the course of such
commission or attempt.' <u>State v. Williams</u>, 172 W. Va.
295, 311 S.E.2d 251, 267 (1983) (citing <u>State v. Beale</u>,
104 W. Va. 617, 141 S.E. 7 (1927))."

<u>State v. Lanham</u>, 639 S.E.2d 802, 807 (W. Va. 2006).]

In West Virginia, it is a well settled point of law,
now codified from long standing precedent, that an
indictment need not specify the State's theory of
prosecution. That includes both the specific degree of
murder and the felony murder theory. <u>See</u> Syllabus Point
5, <u>State v. Bragg</u>, 235 S.E.2d 466 (W. Va. 1977)("An
indictment which charges that a defendant feloniously,
wilfully, maliciously, deliberately, premeditatedly and
unlawfully did slay, kill and murder is sufficient to
support a conviction for murder committed in the
commission of, or attempt to commit arson, rape, robbery,
or burglary, it not being necessary under W. Va. Code,
61-2-1, to set forth the manner or means by which the
death of the deceased was caused."). Because felony
murder is a theory of defense predicated on the
underlying felony for purposes of eliminating malice,
intent and premeditation from the State's burden of proof
for murder, the underlying felony is not an "essential
element" of the crime for purposes of the indictment. No
federal precedent has held this to be a violation of due
process.

Because Petitioner does not argue that he was
unaware he was being tried on a felony murder theory of
prosecution, or that the indictment hindered his ability
to mount a defense and altered the outcome of the

> proceedings, this claim amounts to a mere challenge to
> the indictment on technical grounds under state law.
> This is insufficient to demonstrate a Sixth Amendment
> violation.

(# 10 at 8-9).

Respondent further contends that Petitioner's claim that there was a material variance between the indictment and the jury instructions is moot, in light of Petitioner's failure to demonstrate that the indictment was flawed.  Respondent states:

> The instructions in this case were an accurate statement
> of both state law and the State's theory of prosecution
> and Petitioner does not state otherwise.  Therefore, this
> claim fails to raise a federal issue.

(Id. at 10).

Petitioner's Reply asserts that he was unable to mount a defense to the "amended portion" of the indictment because he would have to give up his Fifth Amendment right not to incriminate himself.  (# 13 at 9).  Petitioner further contends that the variation between the indictment and proof at trial cannot be dismissed as harmless error.  He states:

> This variation destroys the defendant[']s substantial
> rights to be tried only on charges presented in an
> indictment returned by a grand jury.  The rule is that
> the charge in the indictment may not be broadened through
> an amendment, except by the grand jury itself, this is
> violated when the court permitted the prosecutor to offer
> evidence on a charge that is not contained in the
> indictment, and then submits that charge to the jury as
> an element of the crime charged in the indictment.  "The
> State substitute[d] the proof of the underlying felony as
> proof of the charge in the indictment."

(Id.) [Emphasis in original].

12

The State habeas court made the following findings concerning this claim for relief:

> In <u>State v. Satterfield</u>, 193 W. Va. 503; 457 S.E.2d 440 (1995), a case very analogous to the present case, the Supreme Court of Appeals of West Virginia held that an indictment charging a defendant with feloniously, maliciously, deliberately, and unlawfully slaying, killing and murdering a victim sufficiently charged the defendant with felony murder, despite the fact that said indictment neither specifically charged the defendant with felony murder nor directly alleged that the murder occurred during the commission of a robbery. [FN 1]
>
> [FN 1 - The appellant in <u>Satterfield</u> argued that it was error for the trial judge to read instructions regarding felony murder because the indictment merely charged the appellant with "feloniously, maliciously, deliberately and unlawfully . . . slay[ing], kill[ing], and murder[ing] one Billy Harper[.]"]
>
> Citing language from <u>State v. Young</u>, 73 W. Va. 1; 311 S.E.2d 118 (1983), the Court held the following:
>
>> An indictment which charges that the defendant feloniously, wilfully, maliciously, deliberately, premeditatedly and unlawfully did slay, kill and murder is sufficient to support a conviction for murder committed in the commission of, or attempt to commit arson, rape, robbery or burglary, it not being necessary, under W. Va. Code, 62-2-1, to set forth the manner or means by which the death of the deceased was caused.
>
> <u>Satterfield</u>, 193 W. Va. at 513; 457 S.E.2d at 450, citing, Syl. Pt. 10, <u>State v. Young</u>, 173 W. Va. 1, 311 S.E.2d 118 (1983)(internal citations omitted).
>
> * * *
>
> Specifically, Petitioner challenges whether the statutory form for a murder indictment as set forth under W. Va. Code § 62-2-1, when used in a felony murder case, is consistent with Article III, Section 14 of the Constitution of West Virginia [and the Fourteenth Amendment of the United States Constitution]. The

13

Petitioner argues that an indictment following the aforementioned statutory form is constitutionally insufficient to allege felony murder because said form fails to allege an essential element of the crime, *i.e.* the underlying felony of robbery.

The Court rejects the Petitioner's claim that the form of the indictment was constitutionally flawed.  The law of West Virginia militates against the Petitioner's claims.

In consideration of the aforementioned case law, "it is clear that the indictment did not need to specifically charge the appellant with felony murder." <u>Satterfield</u>, 193 W. Va. at 513; 457 S.E.2d at 450.  Accordingly, the Court concludes that [the] indictment charging the Petitioner with murder was not defective, nor constitutionally flawed, and the Petitioner's conviction must therefore be sustained.

(# 9, Ex. 6 at 9-11).

Thus, in <u>Satterfield</u>, the SCAWV found that an indictment like Petitioner's was sufficient under West Virginia law.  As repeatedly noted by Respondent, and as found by the state habeas courts, the indictment need not state the underlying felony that forms the basis of felony murder, or the manner in which the deceased died. The SCAWV's interpretation of the murder statute is conclusive and binding on the federal court.  <u>See</u> <u>Wainwright v. Goode</u>, 464 U.S. 78, 84 (1983); <u>Garner v. Louisiana</u>, 368 U.S. 157, 169 (1961)("the views of the state's highest court with respect to state law are binding on the federal courts."); <u>Faircloth v. Finesod</u>, 938 F.2d 513, 517 n.9 (4th Cir. 1991)("This court is bound by the state court's interpretation [of a state statute], and must assume that the statute says what the state court says it says.")

14

This concept was recently reiterated in a ruling on a section 2254 petition filed in the Northern District of West Virginia: "The determination of the intent of the Legislature of the State of West Virginia is solely within the province of the West Virginia Supreme Court of Appeals and its subordinate courts, not with the federal courts.  It is not the role of the federal judiciary to contradict the state courts on their law." Jones v. Painter, 140 F. Supp.2d 677, 679 (N.D. W. Va. 2001)(Broadwater, J.).  The Jones court further stated: "Claims that a state court misapplied its own statutes are not proper for litigation on federal habeas corpus." Id.

Furthermore, Petitioner had fair notice of the charges against him.  Thus, the indictment was not so fatally flawed as to deny Petitioner a fair trial.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on these claims were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on Ground One of Petitioner's section 2254 petition.

**B.   Petitioner's ineffective assistance of counsel claim.**

In Ground Two of his section 2254 petition, Petitioner contends that his trial counsel provided ineffective assistance because he failed to properly investigate, present or argue

15

mitigating evidence, and failed to move for a unitary trial which,
he asserts, would have allowed the jury to find that he was
entitled to mercy.  (# 2 at 8).

In <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the Supreme
Court adopted a two-prong test for determining whether a defendant
received adequate assistance of counsel.  A defendant must show (1)
that counsel's representation fell below an objective standard of
reasonableness; and (2) that there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  <u>Id.</u> at 687-91.  Moreover,
"judicial scrutiny of counsel's performance must be highly
deferential." <u>Id.</u> at 689.  Furthermore, the AEDPA "adds a layer of
respect for a state court's application of the legal standard."
<u>Holman v. Gilmore</u>, 126 F.3d  876, 881 (7th Cir. 1997).

As noted by Respondent:

> In reviewing a trial counsel's performance, there is
> a strong presumption that counsel's conduct was within
> the wide range of reasonable professional assistance, <u>id.</u>
> at 689, and the burden is on the Petitioner to show
> prejudice. <u>Hutchins v. Garrison</u>, 724 F.2d 1425 (4th Cir.
> 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984). Further, "[a]
> convicted defendant making a claim of ineffective
> assistance must identify the acts or omissions of counsel
> that are alleged not to have been the result of
> reasonable professional judgment." <u>Strickland</u>, 466 U.S.
> at 690. A petitioner may not merely speculate about
> potential prejudice but must "affirmatively prove" that
> the result of the proceedings would have been different
> but for the deficient performance of trial counsel. <u>See</u>
> <u>Strickland</u>, 466 U.S. at 693.

(# 10 at 11).  Respondent then discusses the state habeas courts

16

findings concerning this claim, as follows:

> The habeas court, after considering the controlling precedent on the issue in light of the facts of the case, found: "[P]etitioner's trial counsel was not deficient under any objective standard of reasonableness, and the Court further concludes that there is no reasonable probability that, but for the performance of the Petitioner's trial counsel, the result of the Petitioner's criminal jury trial would have been any different than were the results he received." (Resp't Ex. 6 at 8.)

(Id. at 12).

Respondent notes that, at the omnibus hearing, Petitioner's counsel, James Blankenship, testified that his decision not to argue for mercy was trial strategy based on a defense theory of actual innocence.[5]  Although he did not remember many specifics about Petitioner's trial, which occurred 22 years before the omnibus hearing, Mr. Blankenship stated that, in his opinion, arguing for mercy when Petitioner was claiming actual innocence would have been contradictory.  (# 9, Ex. 10 at 23).

In his Response, Petitioner asserts that Mr. Blankenship's complete failure to address any mitigating evidence constituted an abandonment of Petitioner's defense at a critical stage of the case, thus implicating the Supreme Court's decision in United States v. Cronic, 466 U.S. 648, 659 (1984), in which the Court determined that where a defendant "is denied counsel at a critical

---

[5]  As also noted by Respondent, the defense's theory, as addressed in opening statements was that Petitioner's confession was coerced and falsified by the officers who interrogated him. (# 9, Ex. 9 at 25-27; # 10 at 12 n.6)

stage of his trial" or "if counsel entirely fails to subject the prosecutor's case to meaningful adversarial testing," then a petitioner need not make a specific showing of prejudice as required by Strickland.  Petitioner states:

> It is uncontested that defense counsel, [M]r. Blankenship, failed to address mercy in this case. [T]here was not a single reference to mercy in this case; not a single question in the trial record, not a single shred of evidence, and not a single word was spoken in defense counsel's closing arguments to the jury on whether the petitioner should be granted mercy and how it was appropriate in this case.  Instead, the only references the jury heard was the instructions from the trial judge and the prosecutor's arguments.  One of those arguments, that went unobjected to by defense counsel was particularly damaging.  The prosecutor said "**punishment plays no part in your decision**" Not only is this a clear misstatement of the law, it was grossly prejudicial to petitioner, since it is a tacit demand for no mercy.  The defense counsel sat like a bump on a log, allowing this final nail in the coffin of the petitioner to pass without any objection.

(# 13 at 11-13) [Emphasis in original].

The state habeas court set forth, in great detail, the Strickland standard, which was addressed by the SCAWV in its opinion in State v. Miller, 459 S.E.2d 114 (W. Va. 1995).  Quoting Miller, the state habeas court noted that:

> There should be a strong presumption "that counsel's performance was reasonable and adequate.  A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.'  The test of ineffectiveness has little or nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done. [Courts] only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at

18

issue. [Courts] are not interested in grading lawyers'
performances; [they] are interested in whether the
adversarial process at the time, in fact, worked
adequately." 459 S.E.2d at 127.

(# 9, Ex. 6 at 6).  The state habeas court then found as follows:

The Court notes that, pursuant to W. Va. Code § 62-3-15
and State v. Triplett, 187 W. Va. 760; 421 S.E.2d 511,
the decision to recommend mercy to the Petitioner rests
solely in the discretion of the jury.  Accordingly, the
court cannot retrospectively evaluate evidence and
arguments which were or were not made and determine
whether the jury **might** have awarded mercy to the
Petitioner, had such arguments been presented.

The Court, in consideration of all of the aforementioned
and the totality of all circumstances, concludes that the
performance of the Petitioner's trial counsel was not
deficient under any objective standard of reasonableness,
and the Court further concludes that there is no
reasonable probability that, but for the performance of
the Petitioner's trial counsel, the result of the
Petitioner's criminal jury trial would have been any
different than were the results he received.

(Id. at 7-8) [Emphasis in original].

During Petitioner's omnibus hearing, the presiding judge
pointed out that Petitioner's trial took place at a time when state
law did not provide for the bifurcation of trials for guilt and
sentencing.  (# 9, Ex. 10 at 26).  Thus, if Petitioner's counsel
were to present any mitigating evidence for sentencing purposes, he
had to do so at the same time he was presenting evidence and making
argument to the jury concerning Petitioner's guilt or innocence.
Moreover, Petitioner has not identified the specific mitigating
evidence he believes his counsel should have presented, or how it

19

would have swayed the jury to recommend mercy.[6]

Following an exhaustive review of the trial transcripts, it is clear that Petitioner's trial counsel aggressively cross-examined the State's law enforcement witnesses concerning their investigation of this crime. Counsel established that other methods of investigation could have been used and that there were other suspects who had motive and opportunity to kill Mr. Washington. Thus, Petitioner's counsel did not "entirely fail[] to subject the prosecutor's case to meaningful adversarial testing." Cronic, 466 U.S. at 659.

The undersigned proposes that the presiding District Judge **FIND** that counsel's decision not to present mitigation evidence or to argue for mercy in the face of a theory of actual innocence did not fall below an objective standard of reasonableness, and did not constitute per se ineffective assistance of counsel, as addressed in Cronic. Likewise, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that there

---

[6] Petitioner testified at his omnibus hearing and stated that he was willing to testify at his trial and admit to accidentally shooting Mr. Washington, and that he would have asked to receive mercy from the jury. (# 9, Ex. 10 at 61-62). At the omnibus hearing, Petitioner also presented the testimony of several neighbors and relatives who stated that they would have testified that Petitioner was not a violent person, and one woman testified that she didn't think Petitioner committed the crime. (Id. at 36-53). However, some of these witnesses also admitted that they knew Petitioner to be a drug user, which would have supported the State's theory that Petitioner attempted to rob Mr. Washington to pay back a drug debt. (Id.)

is a reasonable probability that the outcome of his trial would have been different, but for his counsel's performance.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state habeas courts' decisions denying Petitioner habeas corpus relief on this basis were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on Ground Two of Petitioner's section 2254 petition.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (# 9), **DENY** Petitioner's Motion to Dismiss Respondent's Motion for Summary Judgment (# 12), **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (# 2), and dismiss this civil action from the docket of the court.

The parties are notified that this Amended Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Amended Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written

objections, identifying the portions of the Amended Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the district court and a waiver of appellate review by the circuit court of appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Amended Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

|  |  |
|---|---|
| _____May 8, 2009_____ | _Mary E. Stanley_ |
| Date | Mary E. Stanley |
|  | United States Magistrate Judge |